UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **CDG ACQUISITION LLC.,** ) | **CASE NO. 1:19CV1198** |
| ) | |
| Plaintiff, ) | **JUDGE CHRISTOPHER A. BOYKO** |
| ) | |
| Vs. ) | |
| ) | |
| **DOLLAR BANK, FEDERAL SAVINGS** ) | **OPINION AND ORDER** |
| **BANK, ET AL.,** ) | |
| ) | |
| Defendants. ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Plaintiff CDG Acquisition, LLC.'s ("CDG") Motion to Strike Defenses Based on Comparative Fault or Commercial Reasonableness. (ECF # 22).  For the following reasons, the Court denies Plaintiff's Motion.

On May 24, 2019, CDG filed its Complaint with the Court, alleging that it owns restaurants in several states that require it to issue a high volume of checks to multiple vendors as well as governmental entities.  CDG maintained a corporate bank deposit account with Defendant JP Morgan Chase Bank, N.A. ("Chase").  At some point during the relevant time period, CDG's senior accountant, Angelo Kanaris, began writing fraudulent checks with CDG's authorized signature stamp to CDG vendors.  Kanaris wrote or stamped on the back of

each fraudulent check the words "Dollar Bank Mobile Remote Deposit Only."  None of the fraudulent checks were indorsed on behalf of any payee and Kanaris never signed the back of the checks on his or anyone else's behalf.  Kanaris had a personal bank account with Defendant Dollar Bank.  Dollar Bank accepted the fraudulent checks and credited Kanaris's personal bank account despite the missing indorsements, the "deposit only" stamp and despite the fact that the payee on the front of the check was an entity or individual other than Kanaris.  Furthermore, Defendant Chase paid the checks and charged them against CDG's account upon presentment.

CDG alleges Breach of Contract against Chase, Payments on Checks not Properly Payable in violation of O.R.C. § 1304.30(A) against Chase, Failure to Exercise Ordinary Care, in violation of O.R.C. §1303 and §1304 against both Defendants and Breach of Duty of Good Faith, in violation of O.R.C. §1304 against both Defendants.

**CDG's Motion to Strike**

According to its Motion, CDG contends Defendants' defenses, based on comparative negligence, fictitious payee rule, CDG's duty to report and commercial reasonableness, must be stricken because they are not available under applicable law.  CDG moves to strike Dollar Bank's defenses at paragraphs 6,7,8,9,11,13,14,16 and 17 of its Answer and paragraphs 4,5,6,7,9,11,12,14, and 15 of Chase's Answer.

CDG argues that the undisputed facts of the case bar any defenses asserting comparative negligence or commercial reasonableness.   CDG has produced the fraudulent checks in this case.  The checks have no indorsements, and  are clearly marked "For Deposit Only."  The checks were not made payable to Kanaris but were instead made payable to

various purported vendors of CDG or governmental entities. The checks were deposited into Kanaris's account despite the above flaws and Chase paid the checks upon presentment from CDG's account.

Thus, under these facts, CDG contends the Uniform Commercial Code does not permit comparative fault and commercial reasonableness defenses against CDG given the obvious errors on the face of the checks.

**Defendants' Opposition**

According to Defendants, CDG's Motion to Strike is premature as no discovery has taken place and the courts in cases cited by both CDG and Defendants had developed factual records before ruling on the applicability of these defenses. Furthermore, Defendants argue that the law allows comparative fault and commercial reasonableness defenses when the drawer's signature is forged even when there are indorsement deficiencies.

**Standard of Review**

Fed. R. Civ. P. 12(f) reads " The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." In *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953), the court commented: "Partly because of the practical difficulty of deciding cases without a factual record it is well established that the action of striking a pleading should be sparingly used by the courts ... It is a drastic remedy to be resorted to only when required for the purposes of justice ... The motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy." (internal citations omitted). "An affirmative defense may be pleaded in general terms and will be held to be sufficient ... as long as it gives plaintiff

fair notice of the nature of the defense." *Nexterra Sys. Corp. v. DeMaria Bldg. Co., Inc.,* No. 16 13454, 2017 WL 345682, at *1 (E.D. Mich. Jan. 24, 2017) quoting *Lawrence v. Chabot*, 182 Fed. Appx. 442, 456-57 (6th Cir. 2006). A motion to strike should be granted only if "it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense and are inferable from the pleadings." *Operating Eng'rs Local 324 Health Care Plan v. G & W Const. Co.,* 783 F.3d 1045, 1050 (6th Cir. 2015)

The decision whether to strike an affirmative defense lies within the Court's discretion. *Conocophillips Co. v. Shaffer,* No. 3:05CV7131, 2005 WL 2280393, at *2 (N.D. Ohio 2005) ("Rule 12(f) permits the Court to act with its discretion in that it may strike irrelevant and superfluous defenses or let them stand. There is absolutely no harm in letting them remain in the pleadings if, as the Plaintiff contends, they are inapplicable.").

At this stage of the proceedings the Court relies on the allegations in the Complaint. In CDG's Complaint, it alleges Kanaris, as CDG's senior accountant, was responsible for CDG's accounts payable. Kanaris had the authority to enter invoices and issue checks to vendors with CDG's signature stamp. He issued several hundred fraudulent checks to vendors which he then had deposited into his own personal account causing loss to CDG.

The Uniform Commercial Code ("UCC") governs the contractual relationship between a bank and its customer. *Ed Stinn Chevrolet, Inc. v. Nat'l City Bank,* 28 Ohio St. 3d 221, 226, 503 N.E.2d 524, 530 (1986), on reh'g, 31 Ohio St. 3d 150, 509 N.E.2d 945 (1987). The UCC "is a delicately balanced statutory scheme designed, in principle, to ultimately shift the loss occasioned by negotiation of a forged instrument to the party bearing the responsibility for the loss. Ideally, the thief is held accountable. The unfortunate reality is

that the loss is often shifted to the innocent party whose conduct or relationship with the forger most facilitated the risk of loss." *Id.* "In general, the drawee bank is strictly liable to its customer drawer for payment of either a forged check or a check containing a forged indorsement. In the case of a forged indorsement, the drawee generally may pass liability back through the collection chain to the party who took from the forger and, of course, to the forger himself if available. In the case of a forged check, however, liability generally rests with the drawee." *Perini Corp. v. First Nat. Bank of Habersham Cty., Georgia,* 553 F.2d 398, 403 (5th Cir. 1977).

The UCC imposes certain responsibilities on all parties to a banking transaction and apportions liability accordingly. UCC 3-406 reads "Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business. § 3-406. *Negligence Contributing to Alteration or Unauthorized Signature., Unif.Commercial Code* § 3-406.

O.R.C. § 1304.35(C) places responsibility on a banking customer to review the statements from the bank to ensure each check was properly authorized. Section (D) reads:

> (D) If the bank proves that the customer failed with respect to an item to comply with the duties imposed on the customer by division (C) of this section, the customer is precluded from asserting either of the following against the bank:
> > (1) The customer's unauthorized signature or any alteration on the item if the bank also proves that it suffered a loss by reason of that failure;

5

> (2) The customer's unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank if the payment was made before the bank received notice from the customer of the unauthorized signature or alteration and after the customer had been afforded a reasonable period of time, not exceeding thirty days, in which to examine the item or statement of account and notify the bank.

However, if the negligent customer "proves" that the bank failed to exercise ordinary care in paying on the check the loss is apportioned between the two.  There is one caveat though.  "If the customer proves that the bank did not pay the item in good faith, the preclusion under division (D) of this section does not apply." *Id.*

Unlike the cases cited by both parties, the facts of this case contain some unique aspects.  Here, Kanaris had authority to write checks and use the CDG signature stamp to pay vendors.  However, it is unclear if the payee/vendors named in the checks were legitimate or fictitious vendors.  Furthermore, Kanaris appears to have added to the checks the "For deposit only" restriction. There was no forged indorsement, as in some cases cited by Defendants, rather, there was no indorsement at all.  Lastly, the checks were deposited into Kanaris's personal account even though he was not the named payee on the checks

"A bank has a duty to examine a restrictive endorsement, follow its directions, and therefore refuse to deposit funds into a particular account—or at least investigate the matter—if the restrictive endorsement so requires." *Cont'l Cas. Co. v. Fifth/Third Bank,* 418 F. Supp. 2d 964, 977 (N.D. Ohio 2006).  "Comparative fault does not apply to the checks with restrictive, missing, or illegible endorsements." *Id* at 979.   The district court in *Continental* held that comparative fault under UCC 3-404 and 3-405 is not in play because these sections only apply to forged endorsements and, as is the case here, a missing or illegible endorsement

is not a forgery.

However, according to Defendants, the facts in this case implicate the "double forgery" rule because the checks at issue contain both an unauthorized signature of the drawer CDG and flawed indorsements. The Sixth Circuit described the rule as follows:

> in single forgery situation in which only the indorsement is forged, the drawer will have validly drawn the check intending the named payee to receive the proceeds in exchange for some consideration given by the payee. When a thief steals the check and forges the payee's indorsement, the payee of course does not receive the proceeds. The thief passes the check to a collecting bank, which forwards it to the drawee, which in turn pays it and debits the drawer's account. At the time the theft is discovered, all parties except the payee are in a neutral position: The collecting bank has paid the forger, but has been paid in turn by the drawee; the drawee has paid the collecting bank, but has in turn debited the drawer's account; and the drawer has lost the amount from his account, but has received the consideration from the payee. Only the payee, who has given consideration but has not received the proceeds, is in a negative position. The payee has the ability to make himself whole either by recovering against the drawer on the underlying transaction or by recovering against the drawee for conversion. Thus, the loss suffered by the drawer or drawee can be attributed to the forged indorsement, in the sense that the theft and forgery resulted in the appearance of a payee with a rightful claim.
>
> By contrast, in double forgery situations the drawer's signature, as well as the indorsement, is forged, meaning that the check was never validly drawn to a payee entitled to payment. Hence no true payee can appear with a claim against the drawer or drawee, and neither of the latter parties can be said to suffer a loss attributable to the forged indorsement. Rather, the loss results from the drawee's making payment over a forged drawer's signature where none was intended by the drawer.
>
> Although the drawee is negligent in paying a check that lacks the indorsement of a named payee, the drawer's loss is caused by the forged drawer's signatures. The drawer did not intend payment to any payee, so no payee can appear and demand payment. The danger guarded against by the requirement of a proper indorsement is absent. It is irrelevant whether the payee is real or fictitious and whether the indorsement is forged, missing, or otherwise defective.

*Nat'l Credit Union Admin. v. Michigan Nat. Bank of Detroit,* 771 F.2d 154, 160 (6th Cir.

1985).

CDG responds that this is not a double forgery scenario because there was no forged indorsement, rather, there was no indorsement at all. Thus, CDG contends the doctrine does not apply and commercial reasonableness and comparative fault defenses are not applicable.

Defendants point out, in the cases relied on by both parties, relevant facts concerning the status of the payees, whether fictitious or legitimate, the authority of drawer signatory to write the checks and how the signature was obtained, and whether the fraudulent check writer acted alone were all fleshed out before the courts made their rulings, on summary judgment. Thus, Defendants argue it is too early to determine whether these defenses have "no possible relation to the controversy."

The Court agrees that at this stage of the proceedings it cannot say that Defendants' defenses have no possible relation to the controversy. Particularly in light of the proofs the UCC requires of both sides in order to claim or disclaim particular defenses such as comparative fault and commercial reasonableness.

Given the fact that the law disfavors motions to strike and that the courts that have considered the applicability of the defenses raised by Defendants did so on summary judgment and not on a motion to strike, the Court denies CDG's Motion. The Court will consider them on summary judgment after discovery fleshes out the facts further. This is the best method for ensuring neither side is prejudiced in putting on or defending the case. As the Sixth Circuit stated in *Nat'l Credit Union* "As we have indicated, however, an alternative rationale for treating double forgeries as if they bore only forged drawer's signatures is that the forged indorsement does not cause the drawer's loss. 771 F.2d at 159. "Regardless of the

degree of the drawer's negligence in accepting a check with a defective indorsement—regardless of whether the indorsement is forged, fails to show representative capacity, or is altogether missing—the defect does not cause the drawer's loss.  Causation, not negligence, is the lynchpin of the *Perini* rule. " *Id.*

Therefore, for the foregoing reasons, the Court denies CDG's Motion.

IT IS SO ORDERED.

Date: May 7, 2020                             /s/Christopher A. Boyko
                                              CHRISTOPHER A. BOYKO
                                              Senior United States District Judge